UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS M. SMITH,

                             Plaintiff,

                v.

TOWN OF LEWISTON,
FRANK PREVITE, individually and in his official
  capacity as Chief of Police of the Town of Lewiston,
JOHN PENZOTTI, individually and in his official
  capacity as a Town of Lewiston Police Officer,
JAMES ULLERY, individually and in his official
  capacity as a Town of Lewiston Police Officer,
JEFFREY SWICK, individually and in his official
  capacity as a Town of Lewiston Police Officer,
MARIA SECURELLA, individually and in her official
  capacity as Town of Lewiston Court Clerk, and
ROB MORREALE, individually and in his official
  capacity as Town of Lewiston Board Member,

                          Defendants.
_____

                                        REPORT
                                        and
                              RECOMMENDATION

                                  18-CV-1069V(F)

APPEARANCES:           THOMAS M. SMITH, *Pro se*
                         630 Cayuga Street
                         Lewiston, New York  14092

                         GOLDBERG SEGALLA L.L.P.
                         Attorneys for Defendants
                         JULIE P. APTER, of Counsel
                         665 Main Street
                         Suite 400
                         Buffalo, New York  14203

## **JURISDICTION**

      This case was referred to the undersigned by Hon. Lawrence J. Vilardo on

February 25, 2019, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion to dismiss (Dkt. 8), filed December 21, 2018.

## **BACKGROUND**

Plaintiff Thomas M. Smith ("Plaintiff"), proceeding *pro se*, commenced this action on September 28, 2018 pursuant to 42 U.S.C. § 1983, alleging Defendants violated Plaintiff's civil rights in connection with several incidents involving Defendants and non-parties to this action.  Plaintiff asserts 13 claims for relief including 12 alleging violations of the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments, as well as one cause of action alleging a denial of equal protection under New York law. Defendants include the Town of Lewiston, several employees of Town of Lewiston Police Department and Court, and a Town of Lewiston board member.

On December 21, 2018, Defendants filed the instant motion to dismiss (Dkt. 8) ("Defendants' Motion"), supported by the attached Attorney Affidavit of Julie P. Apter (Dkt. 8-1) ("Apter Affidavit"), and the Memorandum of Law in Support of Defendants' Rule 12(b) Motion to Dismiss (Dkt. 8-1) ("Defendants' Memorandum").  On February 1, 2019, Plaintiff filed his Response to Defendants' Motion to Dismiss (Dkt. 10) ("Plaintiff's Response").  In further support of Defendants' Motion, Defendants filed on February 15, 2019 the Reply Affidavit of Julie P. Apter (Dkt. 11) ("Apter Reply Affidavit").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED with Plaintiff's claims asserting violations of the Third, Fifth, Eighth, and Ninth Amendments, as well as Plaintiff's Fourteenth Amendment claims for intentional infliction of emotional distress, slander and libel DISMISSED with prejudice, and Plaintiff's remaining claims DISMISSED without prejudice and with leave to replead.

# **FACTS**[1]

Without assessing fault to either side, it is an understatement to say Plaintiff Thomas M. Smith ("Plaintiff" or "Smith") has a rather contentious relationship with numerous law enforcement officials, local court officers, and business people in Lewiston, New York where Plaintiff resides.  Several of these individuals are Defendants to this action including the Town of Lewiston ("Town"), Town of Lewiston Chief of Police Frank Previte ("Previte"), Town of Lewiston Police Officers John Penzotti ("Penzotti"), James Ullery ("Ullery"), and Jeffrey Swick ("Swick"), Town of Lewiston Court Clerk Maria Securella ("Securella"), and Town of Lewiston Board Member Rob Morreale ("Morreale") (together, "Defendants").  The Complaint describes Plaintiff's encounters with Defendants and non-parties between 2011 and 2018 which Plaintiff maintains constitute "on-going harassment and official misconduct," Complaint ¶ 24, which Plaintiff maintains was intended to exacerbate the severe anxiety from which Plaintiff suffers.  *See*, *e.g.*, *id.* ¶¶ 29, 34, 92, 138-39, 141.

On April 12, 2011, while at a bar[2] a "local attorney" struck Plaintiff in the chest after in response to a political statement.  Complaint ¶ 25.  Plaintiff maintains the incident was captured by the bar's security video camera, but does not appear in the 15 minutes of video footage recovered by "chief Salada" ("Salada").  *Id.*  One "Bruce Sutherland" ("Sutherland") maintained the failure to provide the video of the asserted

---

[1] Taken from the pleadings and papers filed in this action.
[2] The bar is not further identified.

battery "was an honest mistake," *id.*, while Plaintiff "believe[s][3] his rights were violated to protect Craig Touma" ("Touma").[4]  *Id.*

While inside a locker room at the Niagara University ice rink on April 9, 2013, Mike Carroll ("Carroll"), a police officer with the Town of Lewiston Police Department ("Lewiston Police"), interrogated other people as to who invited Plaintiff, with one Al White ("White") admitting having extended the invitation to Plaintiff.  Complaint ¶ 26. Carroll told White to never invite Plaintiff again because Plaintiff and Plaintiff's brother-in-law wrote letters to the "Vanguard"[5] complaining about the Lewiston Police, but White denied Plaintiff was involved.  *Id.*

On June 4, 2013, Carroll, driving in a vehicle, followed Plaintiff who was riding a "bike" for 400 yards from Plaintiff's driveway to the end of 7th Street in the Village of Lewiston ("Village"),[6] where Carroll exited his vehicle almost knocking Plaintiff off his bike, swore at and verbally harassed Plaintiff.[7]  Complaint ¶ 27.  Plaintiff maintains the Lewiston Police have a long history of filing false police reports against Plaintiff and Lewiston Police employees and their family members routinely harass Plaintiff and his family.  *Id.* ¶¶ 28-33.

---

[3] Unless otherwise specified, bracketed material has been added.

[4] It is not clear from the Complaint whether Touma is the attorney Plaintiff alleges struck him on April 12, 2011.

[5] "Vanguard" is not further described although the context suggest Vanguard is a periodical type of publication.

[6] Although most of the conduct of which Plaintiff complains occurred in the Village of Lewiston, which is located in the Town of Lewiston, the court takes judicial notice that the Town of Lewiston's official website, *i.e.*, www.townoflewiston.us, indicates Lewiston Police Department provides police protection to both the Town and Village of Lewiston.  *See Christa McAuliffe Intermediate Sch. PTO, Inc. v. DeBlasio*, 364 F.Supp.d 253, 262 (S.D.N.Y.) (taking judicial notice of information available on government website), *aff'd*, 788 Fed.Appx. 85 (2d Cir. 2019).

[7] Plaintiff does not specify whether Carroll was in a patrol vehicle or whether Plaintiff's "bike" was a bicycle or a motorcycle.

On August 8, 2015, Plaintiff, accompanied by his then 12-year old son, was accosted by one Carl Schmidt ("Carl Schmidt") who attempted to fight Plaintiff and when Plaintiff did not engage in the fight, followed Plaintiff and his son.  Complaint ¶¶ 36-38. Plaintiff also received threatening and obscene text messages from Carl Schmidt which Plaintiff and his son reported to Defendant Lewiston Police Officer Ullery, requesting an order of protection again Carl Schmidt, but Ullery refused.  *Id.* ¶¶ 38-44.

Plaintiff describes an incident on September 19, 2015, while at the Brickyard Restaurant ("Brickyard") in the Village with his nephew, David Lilly ("Lilly") ("Brickyard incident"), commencing when Fred Schmidt ("Fred Schmidt")[8] assaulted Lilly and attempted to assault Plaintiff.  Complaint ¶¶ 45-46.  When Plaintiff attempted to retrieve Lilly's debit card from inside the Brickyard bar, Brickyard employee Ben Salhany ("Salhany") struck Plaintiff with a closed fist.  *Id.* ¶ 47.  After Plaintiff exited the Brickyard, Salhany went to the edge of the Brickyard's outdoor patio and struck Plaintiff twice in the face and head while Plaintiff stood on the sidewalk.  *Id.* ¶ 50.  Plaintiff crossed the street and telephoned the 911 emergency dispatch to report the Brickyard incident and Defendant Lewiston Police Officer Swick responded to the scene and took the reports of Plaintiff and David Lilly regarding the alleged assaults at the Brickyard, both inside the restaurant by Fred Schmidt, and near the restaurant's door and on the outside patio by Salhany.  *Id.* ¶¶ 52-53.  On September 22, 2015, Plaintiff requested from the Lewiston Police an order of protection against Carl and Fred Schmidt and Salhany, and left a message for Swick who returned the call on September 25, 2015, advising that based on his review of security video footage of the Brickyard incident, the

---

[8] Plaintiff alleges, and Defendants do not dispute, that Fred Schmidt is the brother of Carl Schmidt, Complaint ¶ 46.

situation did not merit an order of protection because the video showed Plaintiff starting the fight and throwing punches. *Id.* ¶¶ 54-56. Accordingly, Swick did not intend to arrest anyone. *Id.* ¶ 56. When Plaintiff accused Swick of lying, Swick threatened to arrest Plaintiff for disorderly conduct. *Id.* ¶¶ 57-59. Plaintiff asked to view the surveillance video of the Brickyard incident which Swick agreed to preserve for Plaintiff's review, but Plaintiff never received the video from Swick. *Id.* ¶¶ 60-62. Plaintiff maintains the copy of the September 19, 2015 police report concerning the Brickyard incident, which Plaintiff received on September 30, 2015, contains lies establishing Swick fabricated and filed a false police report. *Id.* ¶¶ 62-65. According to Plaintiff, that the police report is false is evident when compared to Plaintiff's 911 call and the video would prove when Swick arrived at the Brickyard on September 19, 2015, Plaintiff was speaking with police dispatch and not yelling and throwing punches at people on the Brickyard's patio as Swick maintains. *Id.* ¶¶ 64-67.

On October 2, 2015, Plaintiff met with Defendant Lewiston Police Chief Previte regarding the allegedly false police report Swick prepared, but Previte responded by accusing Plaintiff of yelling at Previte's secretary. Complaint ¶¶ 68-69. Plaintiff denies yelling at Previte's secretary, asserting he was polite and waited patiently to speak with Previte whom Plaintiff maintains made the false accusation to increase Plaintiff's emotional distress and anxiety. *Id.* ¶¶ 70-74. Previte agreed to preserve both the video of the Brickyard incident and Plaintiff's 911 call and assigned Defendant Lewiston Police Captain Penzotti to investigate the Brickyard incident despite knowing Plaintiff had previously filed complaints and a notice of claim against Penzotti. *Id.* ¶¶ 75-78. Penzotti also agreed to preserve the video footage and Plaintiff's 911 call regarding the

Brickyard incident but failed to do so. *Id.* ¶¶ 79-82. Penzotti also never spoke with any of the witnesses to the Brickyard incident. *Id.* ¶¶ 83-85. Plaintiff maintains the Lewiston Police wrote two different reports regarding the Brickyard incident, which was corroborated when cell phone video of the Brickyard incident "surfaced" showing Lilly being assaulted while Plaintiff showed restraint. *Id.* ¶¶ 86-87.

On October 6, 2015, at the suggestion of Penzotti, Plaintiff met with Eric Matthews ("Matthews") and Ken Bryant ("Bryant"), co-owners of the Brickyard, and Matthews's father, as well as with Penzotti on the Brickyard's patio, but Penzotti stood silently by while the three others immediately began antagonizing and harassing Plaintiff. *Id.* ¶¶ 88-91. Plaintiff walked away from the patio and was followed by the others, three of whom continued to verbally harass Plaintiff while Penzotti only made a feeble request that the others stop the harassment and refused Plaintiff's request to make a police report regarding the harassment of Plaintiff. *Id.* ¶¶ 93-100. On October 13, 2015, Plaintiff was visiting an acquaintance at a building behind another building owned by Matthews and his father who followed Plaintiff and made disparaging remarks, which conduct Plaintiff maintains would not have happened had Penzotti made the police report as per Plaintiff's request on October 6, 2015. Complaint ¶¶ 101-02.

On October 23, 2015, Plaintiff and his son were followed and "menaced" on Center Street by Lewiston Police Officers Swick and Lauren Campbell ("Campbell"). Complaint ¶¶ 103. According to Plaintiff, Swick and Campbell drove ahead of Plaintiff on Center Street, stopping along the side of the street and then glaring as Plaintiff and his son walked by, causing Plaintiff to feel threatened. *Id.* ¶¶ 104-05.

On January 1, 2016, various friends and family of Lewiston Police threatened Plaintiff with physical violence and directed disparaging remarks toward Plaintiff and his family on social media.  Complaint ¶ 106.  Plaintiff telephoned the Lewiston Police and reported the threats to Penzotti who did not want to listen and responded by threatening Plaintiff for making the report.  *Id.* ¶ 107.

On March 12, 2016, while Plaintiff walked along Fifth Street in the Village, Lewiston Police Officer Anthony Nicoletti ("Nicoletti"), a nonparty, drove in his patrol vehicle stalking Plaintiff and then blocked Plaintiff's path with the vehicle, requiring Plaintiff to backtrack to avoid contact with Nicoletti.  Complaint ¶¶ 108-10.  Plaintiff considers the incident an attempt by Nicoletti to bait Plaintiff into physical contact.  *Id.* ¶ 110.

On April 1, 2016, Plaintiff telephoned Lewiston Town Court ("Town Court") and spoke with Defendant Lewiston Town Court Clerk Maria Securella ("Securella"), inquiring whether Plaintiff's bail on charges then pending against Plaintiff and since dismissed had been raised from $ 500 to $ 1,000.[9]  Complaint ¶¶ 111-12.  The inquiry allegedly angered Securella who demanded to know who told Plaintiff his bail was being increased and when Plaintiff refused to disclose the source of his information Securella hung up on Plaintiff.  *Id.* ¶¶ 112-14.  Plaintiff maintains he learned from social media that his bail was changed from $ 500 cash to $ 1,000 property, which caused Plaintiff extreme emotional distress, but the bail was not raised.  *Id.* ¶¶ 115-17.  Plaintiff mailed to Lewiston Town Supervisor and Niagara County Deputy Sheriff Steve Broderick

---

[9] The nature of the charges is not explained in the record.

("Broderick"), a nonparty, requests for "paperwork"[10] and advised that Plaintiff was being harassed by Lewiston Police Chief and police officers, that Broderick gave Town employees "tacit approval . . . to harass and ruin Plaintiff," and that Lewiston Town Court was denying Plaintiff his rights.  Complaint ¶¶ 118-20.

On April 5, 2016, Plaintiff appeared at 5:30 P.M. in Lewiston Town Court before Lewiston Town Justice Hugh Gee ("Justice Gee"), but it was not until 10:35 P.M. that Plaintiff's case, the final case of the evening, was called and the general public had left the building.  Complaint ¶¶ 121-22.  Plaintiff, flanked by two Lewiston police officers, stood before Justice Gee advising Plaintiff did not have an attorney because he never received a copy of the police report to share with a prospective attorney.  *Id.* ¶¶ 123-24.  Plaintiff also repeatedly requested, but was repeatedly denied, a copy of the relevant police report, and Justice Gee told Plaintiff to keep quiet and provided Plaintiff with an application for a public defender which Plaintiff did not want.  *Id.* ¶¶ 124-28.  Plaintiff maintains that Justice Gee then threatened that if Plaintiff ever again yelled at Securella, Justice Gee would lock up Plaintiff for as long as possible.  *Id.* ¶ 129.  When Plaintiff denied ever yelling at Securella, Justice Gee threatened Plaintiff with contempt of court.  *Id.* ¶ 130.  Plaintiff did not receive a copy of the paperwork during the April 5, 2016 court appearance.  On April 19, 2016, Plaintiff was again denied his paperwork and his case was assigned to Johnny G. Destino, Esq. ("Destino"), as counsel whom Plaintiff maintains he neither asked for nor wanted, and who was not a public defender,

---

[10] It is not clear from the Complaint what paperwork Plaintiff was seeking but based on the context of the Complaint, the paperwork seems to pertain to the charges then pending against Plaintiff in Lewiston Town Court for which Plaintiff was seeking to obtain from Securella information on the related bail.

and who Plaintiff immediately replaced with retained counsel James Ostrowski, Esq. ("Ostrowski").  *Id.* ¶ 133.

Meanwhile, on April 12, 2016, Defendant Police Office Ullery responded to a call from one Terry Rutland ("Rutland"), an employee at Coppin's service station which services Lewiston Police vehicles.  Complaint ¶¶ 134-35.  Rutland accused Plaintiff of "broadcasting his voice with a reproduction system."  *Id.* ¶ 134.  Plaintiff received a "criminal summons" from the Lewiston Town Court and Ullery charging Plaintiff with "criminal unreasonable noise" ("noise charge").  *Id.* ¶ 136.  According to Plaintiff, the criminal summons was issued one week before Plaintiff was to undergo a competency hearing so as to harass Plaintiff and intentionally cause Plaintiff pain, anger, anxiety and stress which also affected Plaintiff's young son and elderly father, all of which Captain Previte was aware but failed to take steps to correct, resulting in Defendant's intensifying their harassment of Plaintiff.  *Id.* ¶¶ 137-46.  The noise charge was dismissed by Justice Gee on September 27, 2016.  *Id.* ¶ 150.

On June 14, 2016, Plaintiff was harassed by Carl Schmidt and his family while at Artpark in the Village.  Complaint ¶ 147.

On October 17, 2016, Plaintiff telephoned the Lewiston Police requesting unspecified police reports, but Defendant Previte threatened to arrest Plaintiff if he went to the Lewiston Police headquarters despite there being no reason to bar Plaintiff from police headquarters.  Complaint ¶ 148.  Because he was unable to enter police headquarters, Plaintiff was unable to obtain the police reports needed for "civil processes."[11]  *Id.* ¶ 149.

---

[11] The Complaint does not indicate the nature of the alleged civil processes.

While at Tops Express gas station in Lewiston on October 28, 2016, Defendant Ullery approached Plaintiff and accused Plaintiff of being on Center Street in Lewiston with a megaphone despite knowing the related noise charge against Plaintiff was dismissed by Justice Gee on September 27, 2016. Complaint ¶ 150. Regardless, a Lewiston Police Officer arrived to investigate and one Norm Jones ("Jones"), reported Plaintiff accused Ullery of being a "gas thief." *Id*. After realizing he could be prosecuted for making a false statement, Jones contacted the Lewiston Police and withdrew the statement, *id*., after which Lewiston Police Officer Aaron Lilly ("Aaron Lilly"), a nonparty, arrived to take a new statement from Jones. *Id*. ¶ 151. Jones then reported the exchange between Plaintiff and Ullery with the latter accusing Plaintiff of using a megaphone on Center Street, apologized to Plaintiff, later advising Plaintiff he felt pressured to make the false report. *Id*. ¶ 151-52.

On November 12, 2017, Plaintiff was at Tops Express when he was approached by Carl Schmidt who attempted to engage Plaintiff in a physical confrontation. Complaint ¶ 153. On November 13 and 19, 2017, Plaintiff reported the altercation to New York State Trooper Ryan Burns ("Burns"), a nonparty. *Id*. When Plaintiff was getting gas at Tops Express on November 21, 2017, he engaged in a verbal exchange with Defendant Previte who was at the next gas pump. *Id*. ¶ 156. Previte allegedly threatened to "once again" arrest Plaintiff despite having no basis for doing so. *Id*.

On February 22, 2018, Plaintiff was harassed at Tops Express by Defendant Lewiston Town Board Member Rob Morreale ("Morreale") who allegedly threatened and spit at Plaintiff and refused to allow Plaintiff to leave the store. Complaint ¶¶ 157-58.

Plaintiff maintains Morreale was attempting to intimidate Plaintiff for suing the Town of Lewiston,[12] but the exchange caused Plaintiff to have a severe panic attack.  *Id.* ¶ 159.

On August 25, 2018, Plaintiff, along with many others, was walking on Center Street which was then closed to vehicular traffic to accommodate pedestrians attending the annual Lewiston Jazz Festival, when two Lewiston Police Officers singled out Plaintiff and ordered him to get out of the street and onto the sidewalk.  Complaint ¶¶ 162-63.  Plaintiff maintains the police officers only insisted Plaintiff move onto the sidewalk to harass him.  *Id.* ¶ 164.

## DISCUSSION

**1.    Motion to Dismiss**

Defendants move to dismiss the Complaint for failure to state a claim, arguing the Complaint is devoid of any allegations against the Town, Defendants' Memorandum at 4-6, and Defendant Morreale, *id.* at 12, as well as that none of Plaintiff's 13 claims for relief sufficiently alleges a valid cause of action.  *Id.* at 6-12.  In opposition to Defendants' Motion, Plaintiff argues Defendants rely on factual material not found in the Complaint, thus converting the motion to one for summary judgment, Plaintiff's Response at 7, and that Plaintiff needs discovery to prove additional "crimes" including retaliation and a conspiracy between Lewiston Police and various Town employees, as well as Rutland, Matthews, Bryan, and Salhany.  *Id.* at 7-9.  In further support of dismissal, Defendants argue Plaintiff's Response was not timely filed, and that prior to filing his response, Plaintiff advised Defendants he intended to file an amended complaint, but Plaintiff did not file the required motion nor has Plaintiff sought an

---

[12] The nature of the prior lawsuit against the Town is not explained in the Complaint.

extension of time to do so.  Apter Reply Affidavit ¶¶ 3-6.  Defendants deny relying on anything other than the allegations of the Complaint such that it is not necessary to convert the motion to one for summary judgment, *id*. ¶ 9, several of Plaintiff's claims are time-barred, *id*. ¶ 10, and further maintain Plaintiff should not be permitted to proceed with discovery so as to gather more information to add to the Complaint.  *Id*. ¶¶ 10-13.

As relevant here, Fed.R.Civ.P. 8 ("Rule 8"), provides "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed.R.Civ.P. 8(a)(2).  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Pleadings offering only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or tendering only 'naked assertion[s]' devoid of 'further factual enhancement'" will not avoid dismissal.  *Id.*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Rather, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.*, 556 U.S. at 678-79.

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The complaint's factual allegations "must be enough to raise above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 556. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (reviewing motion to dismiss under 12(b)(6), "accepting as true the factual allegations in the complaint and drawing all references in the plaintiff's favor").

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 544 (2007), and quoting *Iqbal*, 556 U.S. at 678). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' –

'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

Because Plaintiff is proceeding *pro se* his complaint is liberally construed and interpreted "to raise the strongest arguments that [it] suggest[s]." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of N.Y.,* 607 F.3d 18, 24 (2d Cir.2010) (internal quotation marks omitted)). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009)). Further, "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Id.* (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)); *see also* Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nevertheless, where amendment would be futile, dismissal may be with prejudice and without leave to amend. *Chavis*, 618 F.3d at 170; *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## 2.    42 U.S.C. § 1983

As stated, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of

substantive rights.'" *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere

conferred' . . . ." *Id.*  To succeed on a § 1983 claim, a plaintiff must establish the

challenged conduct "(1) was attributable to a person acting under color of state law, and

(2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or

laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir.

1997).  Further, it is basic that liability under § 1983 requires a defendant's personal

involvement in the alleged deprivation of a federal right.  *See Warren v. Pataki*, 823

F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must

establish a given defendant's personal involvement in the claimed violation in order to

hold that defendant liable in his individual capacity.'" (quoting *Patterson*, 375 F.3d at

229)).

The elements of a § 1983 claim, as stated, include (1) the deprivation of a federal

constitutional or statutory right, and (2) by a person acting under color of state law.

*Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 640

(1980)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional

right allegedly infringed."  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and

*Baker*, 443 U.S. at 140).  In the instant case, Plaintiff alleges that he was subjected to

multiple deprivations of his federal constitutional rights under the First, Third, Fourth,

Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments.[13]

---

[13] Plaintiff's Thirteenth Claim asserting a violation of equal protection under New York law is addressed below in combination with Plaintiff's First Claim alleging a Fourteenth Amendment equal protection violation.  *See* Discussion, *infra,* at 38-41.

3.    **Statute of Limitations**

Defendants argue in support of dismissal under Rule 12(b)(6) that the various claims asserted against them pertain to separate incidents and are time-barred by the three-year statute of limitations applicable to § 1983 claims as well as a one-year statute of limitations applicable to common law intentional torts in New York. Defendants' Memorandum, *passim*. In opposition, Plaintiff argues the Complaint alleges a series of separate and discrete acts that collectively constitute a continuing violation for which the limitations period has not run, Plaintiff's Response at 2, 6, and also maintains that even if his claims are separately considered, many of them occurred after September 28, 2015, *i.e.*, less than three years before Plaintiff commenced this action on September 28, 2018, and thus are not time-barred. *Id.*, *passim*. In further support of dismissal, Defendants advise they "continue to maintain that the complaint involves matters that are beyond the statute of limitations period." Apter Reply Affidavit ¶ 9. In this case, Plaintiff cannot avoid dismissal of some of his claims as time-barred.

Section 1983 actions arising in New York are subject to New York's general three-year statute of limitations for torts, N.Y. C.P.L.R. § 214 (McKinney 2019) ("§ 214"). *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002), and N.Y. C.P.L.R. § 214 (McKinney 2013)). "A § 1983 claim 'accrues when the plaintiff knows or has reason to know of the harm [caused by a defendant].'" *Mahany v. City of Buffalo Police Department*, 777 Fed. Appx. 547, 549 (2d Cir. 2019) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). In the instant case, Plaintiff's claims are predicated on incidents occurring as early as April 12, 2011 and as recently as August 25, 2018. Because Plaintiff did not file his Complaint until

September 28, 2018, any claims that are based on incidents occurring before
September 28, 2015 are time-barred unless such claims are part of a continuing
violation.

"The continuing violation doctrine, where applicable, provides an exception to the
normal knew-or-should-have-known accrual date.'" *Gonzalez v. Hasty*, 802 F.3d 212,
220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir.
1999)).  "It applies to claims 'composed of a series of separate acts that collectively
constitute one unlawful [ ] practice.'"  *Id.* (quoting *Washington v. County of Rockland*,
373 F.3d 310, 318 (2d Cir. 2004) (brackets in original) (further internal quotation
omitted)).  "The continuing violation doctrine thus applies not to discrete unlawful acts,
even where those discrete acts are part of a 'serial violation[ ],' but to claims that by
their nature accrue only after the plaintiff has been subjected to some threshold amount
of mistreatment."  *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111
(2002)).  Even with application of the continuing violation doctrine, however, a claim will
be timely "only if the plaintiff 'alleges . . . some non-time-barred acts' contributing to the
alleged violation."  *Id.* (quoting *Harris*, 186 F.3d at 250) (brackets omitted).  Although the
continuing violation doctrine typically arises in the context of an employment
discrimination claim, its application is not limited to that context, and has been applied to
§ 1983 claims.  *Id.* (citing *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009)).
*See Sherman v. Town of Chester*, 752 F.3d 554, 566 (2d Cir. 2014) (considering under
continuing violation doctrine the timeliness of § 1983 claims brought by plaintiff real
estate developer alleging an unconstitutional taking of land plaintiff sought to develop
based on repeated regulatory "hurdles" placed by municipality over course of a decade

delaying the planned development because "[a] claim based on such a 'death by a thousand cuts' theory requires a court to consider the entirety of the government entity's conduct, not just a slice of it.").

For the continuing violation doctrine to apply to Plaintiff's claims, Plaintiff must "allege the persistence of the municipal policy and non-time-barred acts indicating the acquiescence of policy-making officials in subordinates' misconduct." *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009). "The continuing violation doctrine is generally viewed with disfavor in the Second Circuit and should be applied only on a showing of compelling circumstances." *Rebrovich v. Cty. of Erie*, 544 F.Supp.2d 159, 169 (W.D.N.Y. 2008) (citing *McFadden v. Kralik,* 2007 WL 924464, at *7 (S.D.N.Y. March 28, 2007); *Curtis v. Airborne Freight Corp.,* 87 F.Supp.2d 234, 244 (S.D.N.Y.2000)). "Courts have found compelling circumstances where 'the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy [that is] alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness.'" *Rebrovich*, 544 F.Supp.2d at 169 (quoting *Remigio v. Kelly,* 2005 WL 1950138, at *8 (S.D.N.Y. Aug. 2, 2005) (quoting *Yip v. Bd. of Trs. of State Univ. of N.Y.,* 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004)) (internal quotation marks omitted)). Further, "[t]he mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation." *Id.*, at 170 (citing *Blankman v. County of Nassau,* 819 F.Supp. 198, 207 (E.D.N.Y.1993) (citing *Delaware State College v. Ricks,* 449 U.S. 250, 257 (1980) (continuing violation cannot be based on the continuing effects of earlier unlawful conduct))).

In the instant case, although Plaintiff alleges numerous incidents of assertedly ongoing harassment by Defendants occurring between April 12, 2011 and August 25, 2018, Plaintiff has not sufficiently alleged "the requisite compelling circumstances necessary to apply the continuing violation doctrine." *Rebrovich*, 544 F.Supp.2d at 170. Rather, as stated in the Complaint, Plaintiff was aware of each alleged act of harassment and asserted constitutional violation on the dates they occurred, yet Plaintiff "has failed to show an openly espoused policy of illegality," *id.*, motivating Defendants' conduct, nor can Plaintiff establish that such claims accrued only after Plaintiff was "subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220.

In particular, although Plaintiff alleges there was a practice or policy of Town employees to violate Plaintiff's constitutional and civil rights by failing to investigate Plaintiff's complaints, failing to protect Plaintiff from harassment or to issue the orders of protection Plaintiff requested, and making false accusations against Plaintiff, Plaintiff utterly fails to allege in the Complaint such conduct was the result of an "openly espoused policy of illegality." *Rebrovich*, 544 F. Supp.2d at 169. Accordingly, the court need not consider whether the alleged acts of harassment and constitutional violations occurring more than three years before Plaintiff filed the Complaint on September 28, 2018 constituted violations of § 1983.[14]

Although the undersigned recommends dismissing as time-barred all claim accruing prior to September 28, 2015, because this action is before the undersigned for

---

[14] The court notes that insofar as Plaintiff could state claims for libel, slander, or defamation under New York law, rather than as § 1983 violations, such claims are barred by a one-year statute of limitations running from the dates of publication of the asserted objectionable statements, here, dates in 2015 and 2016, which occurred more than one year before Plaintiff filed the Complaint on September 28, 2018 and thus are time-barred. *McKenzie v. Dow Jones & Co.*, 355 Fed.Appx. 533, 535 (2d Cir. 2009) (limitations period for defamation claim in New York is one year from date of publication); N.Y. Civ.Prac.L.&R. 215[3] McKinney's 2006 (one-year limitations period for slander and libel).

a report and recommendation, whether each of the time-barred claims states a claim for which relief can be granted is alternatively addressed in the interest of completeness.

### 4.    Dismissal With or Without Prejudice

Several of Plaintiff's claims assert claims that are not legally cognizable and, as such, should be dismissed with prejudice and without leave to replead; however, other of Plaintiff's claims contain a glimmer of plausibility yet as pleaded are too opaque for the court to glean whether all elements of the purported claims are presented. Accordingly, the claims for which it is legally impossible for Plaintiff to plead should be dismissed as futile and thus without prejudice and with leave to replead. *Cf.*, *Chavis*, 618 F.3d at 170 (where amendment would be futile, dismissal may be with prejudice and without leave to amend).

### A.    Claims To Be Dismissed Without Leave to Replead

The court first addresses several of Plaintiff's claims that should be dismissed without leave to replead because they are not recognized as legal claims, at least with regard to the scenario presented in the Complaint.  These claims include those asserting violations of the Third, Fifth, Eighth, and Ninth Amendments,[15] as well as Plaintiff's Fourteenth Amendment claims for intentional infliction of emotional distress, slander and libel, claims against the Town, and claims against Defendant Morreale for lack of personal involvement, each of which is addressed below.

---

[15] In separately addressing each of Plaintiff's thirteen claims, Defendants do not necessarily discuss the inapplicability of these Amendments to Plaintiff's claims, nor does Plaintiff attempt to explain their applicability in responding in opposition to Defendants' Motion.  Nevertheless, the court does so in the interest of judicial economy and completeness.

### 1.    Third Amendment

In his Fourth, Fifth, and Sixth Claims, Plaintiff asserts violations of the Third

Amendment which provides "[n]o Soldier shall, in time of peace be quartered in any

house, without the consent of the Owner, nor in time of war, but in a manner to be

prescribed by law."  U.S. Const. Amend. III.  Although not specifically addressed by

Defendants, even liberally read, the Third Amendment is clearly irrelevant to Plaintiff's

claims and should be dismissed with prejudice.  *See Rivera v. Federal Bureau of*

*Investigation*, 2016 WL 6081435, at * 3 n. 4 (N.D.N.Y. Sept. 13, 2016) (noting, *inter alia*,

the Third Amendment was "clearly irrelevant to Plaintiff's claims" and recommending

dismissal of claims predicated upon the Third Amendment), *report and recommendation*

*adopted*, 2016 WL 6072392 (Oct. 17, 2016).

Defendants' Motion should be GRANTED insofar as Plaintiff's Fourth, Fifth, and

Sixth Claims assert violations of the Third Amendment, with prejudice.

### 2.    Fifth Amendment

In all but his Thirteenth Claim, Plaintiff references the Fifth Amendment as a

source for the relief sought.  Complaint First, Second, Third, Fourth, Fifth, Sixth,

Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims.  Plaintiff does not specify

either in the Complaint or in Plaintiff's Response how Defendants allegedly violated his

Fifth Amendment rights, but Defendants have generally interpreted these claims as

asserting violations of Fifth Amendment due process protection asserting the

statements in the Complaint are conclusory and insufficient to state any claim under the

Fifth Amendment.  *See* Defendants' Memorandum at 6-12.

As relevant to the instant case, the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.  The Fifth Amendment, however, "'is applicable to federal actors, not state actors.'"  *Keitt v. NYS Dept. of Corrections and Community Supervision*, 2015 WL 2383687, at * 20 (W.D.N.Y. May 19, 2015) (quoting *Rosado v. Schneiderman*, 2014 WL 2763622, at *8 (N.D.N.Y. June 18, 2014)); *Burgess v. County of Rensselaer*, 2006 WL 3729750, at * 5 (N.D.N.Y. Dec. 18, 2006) (granting, *sua sponte*, summary judgment on Fifth Amendment claims asserted against municipal, rather than federal, actors).  A plain reading of the Complaint establishes it is devoid of any assertion of federal action taken against Plaintiff, *i.e.*, by agents of the United States.  Even if such a taking by state actors may be actionable under § 1983, Plaintiff's allegations are too generalized to plausibly allege such a violation.

Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's claims asserting violations of the Fifth Amendment, with prejudice.

### 3.    **Eighth Amendment**

In his Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims, Plaintiff asserts violations of the Eighth Amendment.  Defendants do not specifically address these claims, yet it is well-established that the Eighth Amendment pertains only to convicted prisoners.  *See Ingraham v. Wright*, 430 U.S. 651, 664-72 & n. 40 (1977) (construing the Eighth Amendment's "proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes."); *Bonilla v. Jaronczyk*, 354 Fed.Appx. 579, 581 (2d Cir. 2009) (Eighth Amendment applies to constitutional claims arising post-conviction).  Because a fair reading of the Complaint

shows none of the events on which Plaintiff's claims are predicated occurred after Plaintiff was convicted of a crime or while Plaintiff was incarcerated, no Eighth Amendment claim can lie.

Defendants' Motion should be GRANTED insofar as Plaintiff's Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims attempt to assert violations of the Eighth Amendment, with prejudice.

### 4.    Ninth Amendment

Plaintiff's Complaint asserts violations of the Ninth Amendment, Complaint, First, Second, Third, Fifth, Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims, which states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const., amend. IX.  It is difficult to discern from both the Complaint and Plaintiff's Response the asserted basis for a Ninth Amendment violation, nor do Defendants specifically argue in support of dismissal of any claims for failure to state a claim under the Ninth Amendment.  Nevertheless, Plaintiff's claims should be dismissed insofar as they rely on the Ninth Amendment because the Ninth Amendment is "not an independent source of individual rights." *Jenkins v. C.I.R.,* 483 F.3d 90, 92 (2d Cir.2007).  Rather, the Ninth Amendment "provides a 'rule of construction,'" which "dictates that 'the full scope of the specific guarantees in the Constitution is not limited by the text, but embraces their purpose.'" *Id.* (quoting *United States v. Bifield,* 702 F.2d 342, 349 (2d Cir.1983)).  Accordingly, the Ninth Amendment "cannot serve as the basis for a § 1983 claim."  *See Posr v. City of New York*, No., 2013 WL 2419142, at *12 (S.D.N.Y. June 4, 2013) (dismissing *pro se* plaintiff's § 1983 claims under the Ninth Amendment  and citing *Brown v. City of New*

*York,* No. 11 CIV 1068, 2013 WL 491926, at *4 (S.D.N.Y. Feb. 8, 2013) (dismissing §

1983 claim premised on violation of Ninth Amendment); and *Subgidio v. Graiani,* No. 05

CIV 4065, 2006 WL 648229, at *7 (S.D.N.Y. Mar. 16, 2006) (holding that a Plaintiff's

Ninth Amendment claim failed "because that amendment cannot be enforced by means

of an action under § 1983")), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d

Cir. 2014).

Defendants' Motion should be GRANTED with prejudice and without leave to

replead with regard to Plaintiff's Ninth Amendment claims asserted in Plaintiff's First,

Second, Third, Fifth, Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims, with prejudice.

### 5.    Fourteenth Amendment

Although not specifically stated, insofar as the Fourteenth Amendment is

asserted as a basis for each of Plaintiff's first 12 claims, a liberal reading of the

Complaint indicates Plaintiff relies on substantive due process provided by the

Fourteenth Amendment.  The Supreme Court, however, has held that where a particular

amendment "provides an explicit textual source of constitutional protection" against

particular government behavior, "that Amendment, not the more generalized notion of

substantive due process, must be the guide for analyzing these claims."  *Graham v.

Connor*, 490 U.S. 386, 395 (1989).  The following claims as alleged by Plaintiff are not

recognized under the Fourteenth Amendment and therefore should be dismissed for

failing to state a claim without leave to replead.

### a.    Intentional Infliction of Emotional Distress

Plaintiff's Seventh Claim alleges intentional infliction of emotional distress in

violation of the Fourteenth Amendment.  No such constitutional claim, however, has

been recognized within the Second Circuit.  *See Scott v. City of Rochester*, 2019 WL 4016165, at * 4 (W.D.N.Y. Aug. 26, 2019) (citing *Anderson v. City of New York*, 2013 WL 6182675, at * 3 & n. 5 (S.D.N.Y. Nov. 19, 2013) (observing "while there are no Second Circuit decisions on point, federal courts in other districts have dismissed § 1983 claims for intentional infliction of emotional distress because it is not a cognizable constitutional claim")).  Accordingly, Defendants' Motion should be GRANTED with prejudice as to this asserted claim.

### b.      Slander and Libel

In his Eighth Claim, Plaintiff alleges that false statements included in Swick's police report of September 19, 2015, constituted slander, and libel in violation of the Fourteenth Amendment.  Complaint, Eighth Claim ¶¶ 240-41.  Plaintiff further alleges Defendant Previte lied about Plaintiff yelling at his secretary, *id.* ¶ 243, Securella lied to Justice Gee about Plaintiff, *id.* ¶ 244, causing Justice Gee to threaten Plaintiff with incarceration, *id.* ¶ 245, which in turn caused Plaintiff's "co-parent to file in Erie Co. Family Court," *id.* ¶ 246, all resulting in damage to Plaintiff's reputation.  *Id.* ¶ 247.  It is settled, however, that "a § 1983 claim does not lie based solely upon allegations of slander or libel."  *Thomas v. Heid*, 2017 WL 9673716, at * 5 (N.D.N.Y. Dec. 6, 2017) (citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)).

Defendants' Motion therefore should be GRANTED with prejudice as to Plaintiff's Eighth Claim.

### B.    Claims To Be Dismissed With Leave to Replead

Having dispensed with those portions of the Complaint that are legally impossible and, as such, cannot state valid claims for relief and are being dismissed without leave to replead, the court turns its attention to the remaining claims that are not void *ab initio*.

### 1.    *Monell* Liability

Defendants argue all claims against the Town of Lewiston must be dismissed pursuant to the Supreme Court's decision in *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978) ("*Monell*").  Defendants' Memorandum at 4-6.  In opposition, Plaintiff argues the Complaint sufficiently alleges the Town had a custom of depriving Plaintiff of rights protected under the Constitution, including by Defendant Lewiston Police Chief Previte to whom Plaintiff repeatedly complained about violations by Lewiston Police Officers and others, yet took no action to stop the asserted violations.  Plaintiff's Response at 7.

A municipality like the Town cannot be held vicariously liable under § 1983 based on its employees' constitutional torts, nor subjected to liability based on the doctrine of *respondeat superior*, but may only be held liable when it can fairly be said the municipality is the wrongdoer.  *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).  Accordingly, to impose liability on a municipality for a constitutional deprivation, the plaintiff must allege the deprivation was caused by "action pursuant to official municipal policy."  *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell*, 436 U.S. at 691).  Under *Monell*, local governing bodies, such as the Town of Lewiston, may be sued directly under § 1983 only where "a violation of rights resulted from the 'government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Nagle v. Marron,* 663 F.3d

27

100, 116 (2d Cir. 2011) (quoting *Monell,* 436 U.S. at 694). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. To adequately plead a *Monell* claim against a municipality, a plaintiff must adequately allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91). "The fifth element — the 'official policy' element — can only be satisfied where a plaintiff proves that a "municipal policy of some nature caused a constitutional tort." *Id.* (quoting *Monell*, 436 U.S. at 691). "'In other words, a municipality may not be found liable simply because one of its employees committed a tort.'" *Id.* (quoting *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 405 (1997)). Further, "'municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Brogdon v. City of New Rochelle*, 200 F.Supp.2d 411, 427 (S.D.N.Y. 2002) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 483 (1986), and citing *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985)).

In the instant case, Plaintiff has failed to sufficiently allege a *Monell* claim against the Town because the Complaint contains only mere generalized assertions as to the existence of a non-specific custom or policy which will not satisfy *Monell*'s requirements, and the Complaint provides no factual support in this regard. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (affirming "that an allegation of

municipal policy or custom would be insufficient if wholly conclusory"); *Maynard v. City of N.Y.*, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013) ("Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim."); *Triano v. Town of Harrison*, 895 F.Supp.2d 526, 535 (S.D.N.Y. 2012) (noting that "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details"); *Duncan v. City of N.Y.*, 2012 WL 1672929, at *2–3 (E.D.N.Y. May 14, 2012) (holding "boilerplate statements" that a municipal defendant had a custom of making and tolerating false arrests and of using excessive force "[were] insufficient to state a claim of municipal liability under *Monell*"). Rather, the only facts in the Complaint refer to Plaintiff's own arrest on charges eventually dismissed, as well as to denials of Plaintiff's requests for orders of protection and for preservation of surveillance video, yet "[a] *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice." *Pittman v. City of N.Y.*, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014); *see also Triano*, 895 F.Supp.2d at 538 (finding the plaintiff "ha[d] not plausibly alleged any facts to support an inference that the [t]own has a custom of tolerating or covering up police abuses" where "[t]he only *facts* included in [the] [c]omplaint relate to [the] [p]laintiff's own arrest"); *Gordon v. City of N.Y.*, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing § 1983 claims against a municipal defendant where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case"). Nor is Plaintiff's argument that the myriad of allegations in the Complaint sufficiently allege Defendant Town and Defendant

Lewiston Police Officers acted pursuant to a "custom" to retaliate against Plaintiff,[16] Plaintiff's Response at 3, sufficient to avoid dismissal of this claim because such facts, if true, would not establish that any of the conduct Plaintiff maintains was in violation of § 1983 represented "a deliberate choice to follow a course of action that was made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur,* 475 U.S. at 483. Rather, a liberal construction of the complaint suggests, at most, that some Defendants may have had a personal dislike of Plaintiff causing them to respond in a negative manner when dealing with Plaintiff; however, such dislike does not establish a policy or practice on behalf of the Chief of Police as required for *Monell* liability. *See Murphy v. City of Elmira*, 2020 WL 709610, at * 3 (W.D.N.Y. Feb. 12, 2020) (dismissing for failure to state a claim plaintiff's *Monell* claim alleging violations of Fourteenth Amendment due process and equal protection against municipal code enforcement officer where the plaintiff's allegations focused solely on his own experiences with the code enforcement officer because "one man's experience does not make a policy"); and *Birmingham v. Ogden*, 70 F.Supp.2d 353, 373 (S.D.N.Y. 1999) (plaintiff unable to establish in opposing summary judgment that defendant mayor and police chief "cooked up" disciplinary charges pursuant to a policy or practice where "the only fair inference is that what happened to plaintiff (assuming things occurred as he claims) was unique to him – a deeply personal vendetta carried out by persons who were out to get him.").

---

[16] Plaintiff does not indicate why Defendants allegedly retaliated against Plaintiff.

Accordingly, Plaintiff has not alleged a *Monell* claim against the Town and

Defendants' Motion should be GRANTED with regard to Plaintiff's claims against the

Town which should be dismissed without prejudice.

### 2.    Personal Involvement

Plaintiff's sole allegation against Defendant Town Board Member Morreale is that

on February 22, 2018 at 7:00 A.M., Morreale harassed Plaintiff while inside Tops

Express, spitting on Plaintiff, threatening him, and refusing to allow Plaintiff to leave the

store.  Complaint ¶¶ 157-58.  Plaintiff attributes Morreale's harassment to an attempt to

intimidate Plaintiff for suing the Town.  *Id.* ¶ 159.  Although Plaintiff does not specifically

name Morreale in any of the 13 claims for relief, in his Ninth Claim, Plaintiff alleges that

"all defendants acts with malicious intent to brutalize and terrorize Plaintiff," *id.* ¶ 257,

"repeatedly acted to intimidate plaintiff both publicly and privately to prohibit and deter

plaintiff from taking legal action and/or defense," *id.* ¶ 258, and "acted with intent to

violate, or with deliberate indifference or reckless indifference to, the plaintiff's clearly

established Constitutional rights."  *Id.* ¶ 259.  Defendants argue in support of summary

judgment that even if true, these allegations fail to show Morreale was acting in his

capacity as a Town Board member when the statements were made, or personally

involved in any deprivation of Plaintiff's civil rights, requiring dismissal of the claim.

Defendants' Memorandum at 12.  In opposition to dismissal, Plaintiff argues that while

at Tops Express on February 22, 2018, Morreale approached Plaintiff and inquired

about Plaintiff's action then pending in federal court against the Town,[17] but when

Plaintiff refused to engage in the discussion, Morreale directed profanity toward Plaintiff

---

[17] The federal action about which Morreale alleged asked Plaintiff is not identified by either Plaintiff or
Defendants.

which Plaintiff maintains was intended to "besmirch" Plaintiff as a trouble-maker.[18] Plaintiff's Response at 5 (Dkt. 10 at 9).[19]

It is settled that an official sued for violating § 1983 must have been acting under color of state law when participating in the allegedly offensive conduct, and stray comments made on the street will not suffice. *See Back v. Hastings on Hudson Union Free School District*, 365 F.3d 107, 122-23 (2d Cir. 2004) ("According to the Supreme Court, 'a person acts under color of state law only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" (quoting *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (further quotation marks and citation omitted)). Here, given that at the time of the alleged constitutional violation Morreale was inside a gas station store early in the morning, Morreale was not plausibly acting in his official capacity as a Town board member; indeed, the statements Plaintiff claims Morreale directed toward him on the morning of February 22, 2018, could have been made by any taxpayer concerned about the use of Town funds to defend Plaintiff's legal action against the Town. Accordingly, any statements Morreale directed toward Plaintiff, even if of a harassing nature, do not qualify as state action for purposes of a civil rights claim.

Defendants' Motion should be GRANTED as to Plaintiff's claim against Morreale which should be dismissed without prejudice.

---

[18] The court notes defamation is not cognizable under § 1983. *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (defamation is a matter of state, not federal, law).
[19] Plaintiff's allegations also fail to specify any putative rights of Plaintiff with which Morreale may have interfered.

### 3.    First Amendment

Plaintiff asserts various violations of his First Amendment including that Defendant Town Court Clerk Securella interfered with Plaintiff's right of access to court by failing to provide Plaintiff with court papers Plaintiff needed to prepare his defense to pending criminal charges, Complaint, Fourth Claim, retaliation by Defendants Town Justice Gee and Court Clerk Securella by denying Plaintiff written notice of charges after Plaintiff refused to engage in what Plaintiff perceived to be an inappropriate line of questioning, *id.*, Tenth Claim, Defendant Town Police filed a false police report charging Plaintiff with filing a false police report to retaliate against Plaintiff's parents' filing federal civil rights claims against New York State Trooper Ben Campbell and Lewiston Police Officer Lauren Campbell, *id.*, Eleventh Claim, and that Defendant Police Officer Ullery filed a false police report charging Plaintiff with unreasonable noise to after Plaintiff complained about gas thieves. *Id.*, Twelfth Claim.

### a.    Access to Court

In support of dismissal Defendants, construing Plaintiff's Fourth Claim as alleging interference with Plaintiff's access to courts, argue Plaintiff does not allege how Securella could have been acting under color of law while speaking with Plaintiff on the telephone on April 1, 2016. Defendants' Memorandum at 8-9. In opposition, Plaintiff argues when Plaintiff telephoned the Town Clerk to inquire about his bail, Securella yelled at Plaintiff, terminated the telephone call, falsely told Justice Gee that Plaintiff was abusive to her, causing Justice Gee to call Plaintiff's case last, after everyone else had left the courtroom, then threatened to lock up Plaintiff. Plaintiff's Response at 4 (Dkt. 10 at 8).

"'To state a claim for denial of access to the courts ... a plaintiff must allege that the defendant took or was responsible for actions that hindered [the plaintiff's] efforts to pursue a legal claim.'"  *Fuller v. Evans*, 586 F. App'x 825, 827 (2d Cir. 2014) (quoting *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (internal quotations omitted)).  Plaintiff simply fails to state a First Amendment access to courts claim merely by alleging that Defendant Securella terminated Plaintiff's telephone call without answering Plaintiff's questions, that Securella falsely told Justice Gee that Plaintiff yelled at her, or by Justice Gee threatening to lock up Plaintiff if he again yelled at Securella.  In short, none of these alleged actions, if true, are alleged by Plaintiff to have interfered with Plaintiff's attempt to seek redress from the courts, nor does Plaintiff assert they did.  Accordingly, Plaintiff's Fourth Claim fails to state a claim for which relief can be granted and should be dismissed without prejudice.

### b.    Retaliation

Defendants argue Plaintiff's Tenth Claim asserting retaliation by Securella pertains only to Securella performing her job duties which is insufficient to state a First Amendment retaliation claim.  Defendants' Memorandum at 11.  In opposition, Plaintiff maintains that when he refused Securella's demand that Plaintiff identify who advised Plaintiff his bail was being raised, Securella falsely reported to Justice Gee that Plaintiff was rude to her, causing Justice Gee to threaten to lock-up Plaintiff.  Plaintiff's Response at 5 (Dkt. 10 at 9).  Plaintiff's Eleventh Claim alleging retaliation pertains to the police report filed by Defendant Swick regarding the September 19, 2015 incident at the Brickyard, which Defendants maintain is time-barred and fails to allege the requisite adverse action.  Defendants' Memorandum at 11.  Plaintiff has not argued in opposition

to dismissal of this claim.  Defendants further argue Plaintiff's Twelfth Claim alleging

Defendant Police Officer Ullery filed a false police report charging Plaintiff with

unreasonable noise to retaliate against Plaintiff for complaining about gas thieves fails

to identify the First Amendment interest Plaintiff maintains was "chilled" by Defendant

Ullery's filing of the police report.  Defendants' Memorandum at 11-12.  In opposition,

Plaintiff asserts only that he was "shocked" by Defendants' "cover up" which was

intended to retaliate against Plaintiff for speaking freely about the "events."  Plaintiff's

Response at 5 (Dkt. 10 at 9).

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a

right protected by the First Amendment; (2) the defendant's actions were motivated or

substantially caused by his exercise of that right; and (3) the defendant's actions caused

him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)

(citing *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001)).  "Chilled speech is

not the *sine qua non* of a First Amendment claim.  A plaintiff has standing if he can

show *either* that his speech has been adversely affected by the government retaliation

or that he has suffered some other concrete harm.  Various non-speech related harms

are sufficient to give a plaintiff standing [to assert a First Amendment violation]."  *Id.*

(italics in original) (citing *Zherka v. Amicone,* 634 F.3d 642, 646 (2d Cir.2011) (lost

government contract); *Tabbaa v. Chertoff,* 509 F.3d 89, 102 (2d Cir.2007) (additional

scrutiny at border crossing); *Dougherty v. Town of N. Hempstead Bd. of Zoning

Appeals,* 282 F.3d 83, 90 (2d Cir.2002) (revoking a building permit); *Gagliardi v. Vill. of

Pawling,* 18 F.3d 188, 195 (2d Cir.1994) (refusal to enforce zoning laws)).  In the

instant case, Plaintiff's Tenth and Eleventh Claims fail to allege either that his speech

was adversely affected or that he suffered some other concrete harm, such as interference with Plaintiff's access to courts, sufficient to state a First Amendment retaliation claim.  Significantly, although Plaintiff maintains Justice Gee threatened to lock him up if Plaintiff again yelled at Securella, there is no indication that Justice Gee ever followed through with the threat, nor does Plaintiff claim that the allegedly false police report prepared by Swick regarding the September 18, 2015 Brickyard incident accused Plaintiff of any misfeasance for which Plaintiff was criminally prosecuted and which allegedly restricted Plaintiff's freedom of speech or court access.  Similarly, Ullery's alleged filing of criminal charges for "unreasonable noise" against Plaintiff to retaliate against Plaintiff for complaining about gas thefts is self-defeating.  Specifically, in the Complaint, Plaintiff attributes the unreasonable noise charge to a complaint made by Coppin's service station employee Rutland, Complaint ¶¶ 134-36, rather than to intended retaliation by any Defendants.

Accordingly, Plaintiff's Tenth, Eleventh, and Twelfth Claims fail to state First Amendment claims for which relief can be granted and should be dismissed without prejudice.

### 4.    Fourth Amendment

In his Fourth Claim, Plaintiff alleges a Fourth Amendment violation based on Ullery's filing of the allegedly false police report criminally charging Plaintiff with unreasonable noise.  Complaint, Fourth Claim.  Defendants and Plaintiff do not address the legal sufficiency of this aspect of Plaintiff's Fourth Claim, yet because the Complaint alleges the noise charge was issued based on a complaint made by Rutland, a non-party, Complaint ¶¶ 134-36, no Fourth Amendment violation is alleged.

In particular, relevant federal law provides that a claim "for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "'Accordingly, a plaintiff asserting such a claim must show some deprivation of liberty consistent with the concept of seizure.'" *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 100, 116 (2d Cir. 1995)). Although in the instant case Plaintiff does not allege he was ever arrested on the noise charge, the court need not consider whether Plaintiff's required presence in court to answer to the charges in the noise charge constituted a post-arraignment seizure for purposes of the Fourth Amendment. *See Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (finding the requirement of a post-arraignment seizure is met when a person is "obligated to appear in court in connection with criminal charges") (internal citations omitted). Rather, "the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly*, 439 F.3d at 151-52. Moreover, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted). Significantly, Plaintiff's allegations in the instant case that the noise charge was issued based on a complaint made by Rutland, Complaint ¶¶ 134-36, absent any allegations raising doubt as to Rutland's veracity in complaining to Ullery, defeat Plaintiff's Fourth Amendment claim which thus should be dismissed for failing to state a claim, without prejudice.

### 5.    Sixth Amendment

In his Eighth, Ninth, Tenth, Eleventh, and Twelfth Claims, Plaintiff asserts

violations of the Sixth Amendment which provides, as relevant here, that those accused

of committing crimes are entitled "to be informed of the nature and cause of the

accusation; . . . and to have the Assistance of Counsel for his defence."  U.S. Const.

Amend. VI.  The Sixth Amendment "applies only to criminal defendants. . . ."  *Dutkiewicz*

*v. Hyjeck*, 135 Fed.Appx. 482, 484 (2d Cir. 2005).  As such, Plaintiff's only allegations

remotely within the confines of the Sixth Amendment is that Defendant Securella denied

Plaintiff written notice of the charges against him which prevented Plaintiff from

obtaining counsel and defending against the charges.  Complaint, Tenth Claim ¶¶ 270-

72.

In support of dismissal, Defendants maintain this claim is asserted only against

Defendant Securella who was not, while engaged in her duties as Lewiston Town Court

Clerk, acting under color of state law.  Defendants' Memorandum at 11.  Plaintiff has not

responded in opposition to this argument.  Nevertheless, regardless of whether

Securella was acting under color of state law while engaged in her duties as Lewiston

Town Court Clerk, Plaintiff has failed to state a Sixth Amendment claim.

In particular, "[t]he Sixth Amendment does not merely provide that a defense

shall be made for the accused; it grants to the accused personally the right to make his

defense."  *Faretta v. California*, 422 U.S. 806, 819 (1975).  "In short, the [Sixth]

Amendment constitutionalizes the right in an adversary criminal trial to make a defense

as we know it."  *Id.*, 422 U.S. at 818 (citing *California v. Green*, 399 U.S. 149, 176

(1977) (Harlan, J., concurring)).  Here, Plaintiff, by maintaining Securella deprived

Plaintiff of written notice of unspecified charges, Complaint, Tenth Claim, ¶¶ 270-71, attempts to allege a deprivation of his Sixth Amendment right to be informed of the nature and cause of the accusation against him.[20]  This claim is, however, factually insufficient because Plaintiff does not allege he was completely unaware of the basis for the charges, or that he subsequently learned he was charged with a more serious crime than initially advised.  *See O'Hagan v. Soto*, 523 F.Supp. 625, 628 (S.D.N.Y. 1981) (citing *U.S. ex rel. Lopez v. Zelker*, 344 F.Supp. 1050, 1055 (S.D.N.Y.) (finding Sixth Amendment violation where investigator extracted incriminating statement from criminal defendant before defendant was advised of outstanding indictment for first-degree murder), *aff'd*, 465 F.2d 1405 (2d Cir. 1972)).  Instead, Plaintiff admits he was provided with the written charges shortly after the April 1, 2016 court appearance which permitted Plaintiff to retain counsel of his choice, Ostrowski, the same day he was assigned Destino as counsel whom Plaintiff promptly discharged.  Complaint ¶ 133.  Significantly, Plaintiff does not allege the delay in obtaining written charges, which allegedly delayed Plaintiff in retaining counsel, prevented Plaintiff from preparing a defense to the charges.  Accordingly, no interest of Plaintiff's protected by the Sixth Amendment was alleged to have been adversely affected, and Plaintiff has failed to state a claim under the Sixth Amendment.

Defendants' Motion should be GRANTED as to Plaintiff's Sixth Amendment claims which should be dismissed without prejudice.

---

[20] The court again notes, *see* Facts *supra*, at 8 n. 9, neither the Complaint nor the motion papers indicate why Plaintiff was required to be in Lewiston Town Court on April 1, 2016.

### 6.    Fourteenth Amendment

As stated, Discussion, *supra*, at 25, Plaintiff asserts each of his first twelve claims for relief under the Fourteenth Amendment, some alleging violations of equal protection, yet others based on substantive due process which is permitted where no other amendment "provides an explicit textual source of constitutional protection" against particular government behavior.  *Graham*, 490 U.S. at 395.  The following Fourteenth Amendment claims should be dismissed for failure to state a claim, but because the asserted claims are legally cognizable, dismissal should be without prejudice and with leave to replead.

### a.    Equal Protection (Federal and New York Law)

In his First Claim, Plaintiff alleges various Defendant law enforcement officers filed criminal reports against Plaintiff yet refused to file criminal reports against others whom Plaintiff accused of similar criminal activity.  Complaint, First Claim.  In particular, Plaintiff maintains Ullery refused to take a criminal complaint from Plaintiff and denied Plaintiff a protective order, *id*. ¶ 168, and later made a police report charging Plaintiff with unreasonable noise based on Rutland's complaint while refusing to take a contradicting statement from Plaintiff.  *Id*. ¶ 170.  Plaintiff further alleges that on September 19, 2015, Defendant Swick filed false police report accusing Plaintiff of assault when surveillance video establishes Plaintiff is the one who was assaulted.  *Id*. ¶ 169.  Plaintiff essentially repeats these same allegations in support of his Thirteenth Claim alleging an equal protection violation under New York's Constitution.[21]

---

[21] Although Plaintiff denominates his Thirteenth Claim as alleging a violation of equal protection under "state common law," Plaintiff references no caselaw establishing common law as a source for an equal protection claim, and the court's research reveals none.  In light of Plaintiff's *pro se* status, the court

Complaint, Thirteenth Claim.  Defendants argue in support of dismissal that Plaintiff has failed to assert a discriminatory motive for the actions allegedly directed toward Plaintiff as required under both the Fourteenth Amendment, Defendants' Memorandum at 6-7, as well as New York law.  *Id.* at 12..  In opposition, Plaintiff reiterates that the repeated refusals by Lewiston police officers to take complaints from Plaintiff, despite multiple threats directed toward Plaintiff and his parents, while Ullery took a complaint from Rutland, a friend of Ullery's, establishes "Plaintiff was subjected to misconduct due to who he is."  Plaintiff's Response at 3 (Dkt. 10 at 7).

Preliminarily, the court recognizes the Second Circuit considers the Equal Protection Clauses of the Federal and New York State Constitutions to be "coextensive" and analyzes both under the same federal standard.  *See Town of Southold v. Town of East Hampton*, 477 F.3d 38, 53 n. 3 (2d Cir. 2007) (citing *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1317 (2d Cir. 1991) (applying federal law to determine whether relevant conduct violated state or federal equal protection)).  Accordingly, Plaintiff's equal protections claims under both the Fourteenth Amendment and New York law are analyzed together.

The Fourteenth Amendment's "Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person.*'"  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (italics in original) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d

_____

addresses Plaintiff's Thirteenth Claim as alleging an equal protection claim in violation of the New York Constitution.

Cir. 1980)).  To state a claim under the Equal Protection Clause for selective enforcement of the law, plaintiffs must plead that (1) they were "treated differently from other similarly situated" individuals and (2) this "differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 790 (2d Cir.2007).  Thus, a Fourteenth Amendment equal protection violation requires that the plaintiff allege discrimination because of membership in a suspect class.  *Bizzaro*, 394 F.3d at 86.  Plaintiff, however, does not allege membership in any suspect class, including Plaintiff's prior confrontations with Defendants, requiring dismissal of the claim.

Alternatively, a so-called "class of one" equal protection violation may be predicated "on selective treatment motivated by ill-will . . . "  *Bizzarro*, 394 F.3d at 86-87, requiring the Plaintiff allege that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010).  Again, Plaintiff has failed to identify any comparator who was subjected to different treatment for the same conduct, must less attempted to show that such difference in treatment is attributed to prohibited ill-will by any Defendant.  Accordingly, Plaintiff has also failed to state an equal protection claim based on a class of one theory.

Defendants' Motion should be GRANTED with regard to Plaintiff's equal protection claims based on the Fourteenth Amendment and New York's Constitution and these claims should be dismissed without prejudice.

### b.     Due Process

Plaintiff alleges violations of Fourteenth Amendment substantive due process based on failure to protect, Complaint, Second Claim, failure to preserve evidence, *id.*, Third Claim, abuse of power, *id.* Fourth Claim, failure to intervene, *id.* Fifth Claim, and police misconduct. *Id.* Ninth Claim.  Unlike Plaintiff's Fourteenth Amendment due process claims for which the undersigned recommends dismissal with prejudice as legally impossible, Discussion, *supra*, at 25-26, each of the following claims is legally recognizable as a Fourteenth Amendment due process violation and the court addressed each in turn.

### 1.     Failure to Protect/Failure to Intervene

In his Second Claim, Plaintiff alleges Defendants Previte, Penzotti, Swick, and Ullery failed to protect Plaintiff from continued harassment by various Lewiston police officers' friends and family members who threatened Plaintiff with physical violence and death, ignored Plaintiff's complaints about the threats, and instead filed false reports against Plaintiff to cover up the misconduct of others.  Complaint, Second Claim. Similarly, in his Sixth Claim, Plaintiff alleges that despite receiving numerous complaints of criminal conduct Plaintiff alleges was directed toward him, Defendant Lewiston Police Chief Previte chose to ignore the alleged wrongdoing. *Id.*, Sixth Claim.  In support of dismissal, Defendants argue that despite alleging that whenever he complained about such conduct, his complaints were ignored, Plaintiff fails to allege the requisite "deliberate indifference" to state a Fourteenth Amendment due process failure to protect claim, and that state officials and municipalities cannot be held liable for the conduct of private actors.  Defendants' Memorandum at 7-8.  Defendants further argue Plaintiff has

failed to identify the specific conduct in which Previte failed to intervene, as well as that such conduct resulted in Plaintiff being arrested and harmed. *Id.* at 9. In opposition, Plaintiff argues with regard to his failure to protect claim that "[i]t is clear in the plaintiff's complaint that because the defendants refused to address the harassment and threats by other individuals including Family and friends of the LEWISTON POLICE the harassment escalated," Plaintiff's Response at 4 (Dkt. 10-8), and further argues with regard to his failure to intervene claim that Defendant police officers violated their "duty to protect individuals from constitutional violations by fellow officers," such that a law enforcement officer may violate one's constitutional rights by failing to intervene when witnessing a fellow police officer violating the individual's civil rights. *Id.*

Preliminarily, insofar as Plaintiff alleges any Defendant violated his civil rights by failing to prevent private actors from violating his civil rights, "[i]t is well settled that state officials and municipalities cannot be held liable for failing to prevent private actors from violating an individual's civil rights." *O'Bradovich v. Village of Tuckahoe*, 325 F.Supp.2d 413, 425 (2d Cir. 2004) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("while the Constitution forbids the State from impinging on an individual's civil rights, 'its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.'")). Simply put, the Fourteenth Amendment does not require a state to "protect the life, liberty and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S at 195. Accordingly, Plaintiff cannot state a § 1983 claim based on the actions of private actors, or based on any law enforcement officer's failure to prevent or protect Plaintiff from such conduct.

As regards Plaintiff's allegations that law enforcement officers failed to protect other law enforcement officers from filing false police reports against him, or violating Plaintiff's civil rights, a law enforcement officer "'has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.'" *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (quoting *O'Neill v. Krzeminski*, 829 F.2d 9, 11 (2d Cir. 1988)).  As relevant here, an officer who fails to intercede is liable for preventable harm caused by the actions of other officers where the officer has reason to know a citizen has been unjustifiably arrested, subject to excessive force, or that any constitutional violation has been committed by a law enforcement official.  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing *O'Neill*, 839 F.2d at 11-12, and *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982)).  Nevertheless, "an officer may only be held liable if he 'observed or has reason to know' that an individual's constitutional right has been violated and he had 'a realistic opportunity to prevent the harm from occurring.'"  *Garnett v. City of New York*, 2014 L 3950904, at * 13 (S.D.N.Y. Aug. 13, 2014) (quoting *Anderson*, 17 F.3d at 557).

Significantly, in the instant case, Plaintiff has failed to allege that he was harmed as a result of the asserted failure to protect or to intervene by Defendants Previte, Penzotti, Swick, and Ullery.  Accordingly, Plaintiff has not alleged the requisite preventable harm, requiring dismissal of the Second and Sixth Claims for failure to state a due process claim based on failure to protect or to intervene, without prejudice.

### 2.    Failure to Preserve Evidence

Plaintiff alleges Defendants failed to preserve or actively destroyed evidence of events which would have exonerated Plaintiff from charges levied in false police reports

and prevented others who engaged in criminal activity against Plaintiff from being held criminally responsible for such conduct.  Complaint, Third Claim.  In support of dismissal, Defendants argue only that the claim is time-barred which argument, as addressed above, Discussion, *supra*, at 17-21, the court agrees with given the failure to preserve evidence occurred before September 28, 2015.  In opposition, Plaintiff argues that in October 2015, *i.e.*, fewer than three years prior to the commencement of this action on September 28, 2018, Defendants Previte indicated to Plaintiff that Defendant Swick had the surveillance video of the September 19, 2015 Brickyard incident, yet when Defendant Penzotti was assigned to investigate the incident, the video was no longer available, leading Plaintiff to conclude the video was destroyed after the Complaint was filed and rendering this claim timely.  Plaintiff's Response at 4 (Dkt. 10 at 8).

"When a § 1983 fair trial claim is premised upon the failure of the police to preserve potentially exculpatory evidence for future testing, the plaintiff must show that the police destroyed the evidence in bad faith."  *Fappiano v. City of New York*, 640 Fed.Appx. 115, 120 (2d Cir. 2016) (citing and quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process.")).  Nor will law enforcement's reckless behavior in handling potentially exculpatory evidence suffice.  *Id.* (citing *Newton v. City of New York*, 779 F.3d 140, 158 (2d Cir. 2015) (holding "bad faith" standard did not create an "absolute duty on the police to preserve evidence based on a freestanding constitutional due process right.")).

Here, Plaintiff has entirely failed to allege any Defendant acted with bad faith in failing to secure any evidence relevant to Plaintiff's claims.

Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's Third Claim for failure to state a due process failure to preserve evidence claim and the claim dismissed without prejudice.

### 3.    Abuse of Process

In his Fifth Claim, Plaintiff asserts abuse of process based on Defendant Swick's alleged falsification of a police report, Defendant Penzotti's covering up Swick's and Schmidts' crimes, Defendant Penzotti's destruction of 911 calls and video from the September 19, 2015 Brickyard incident, and Defendants' engaging in "sick mind games" and lying to Plaintiff about Plaintiff.  Complaint, Fifth Claim.  Defendants argue in support of summary judgment that abuse of power has not been recognized as a § 1983 claim.  Defendants' Memorandum at 9.  Plaintiff does not argue in further support of this claim.

Although often raised as a state claim, "[m]alicious abuse of criminal process also supports liability under § 1983." *Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003).  In support of dismissal of Plaintiff's Fifth Claim, Defendants cite *O'Bradovich v. Village of Tuckahoe*, 325 F.Supp.2d 413 (S.D.N.Y. 2004).  At issue in *O'Bradovich*, however, was whether the plaintiff had stated an abuse of process claim under New York law rather than based on federal law to the extent protectible under § 1983.  *O'Bradovich*, 325 F.Supp.2d at 434.  Nevertheless, a § 1983 claim based on abuse of process borrows the elements of the state common law claim.  *Mangino v. Incorporated Village of Patchogue*, 808 F.3d 951, 958-59 (2d Cir. 2015).  Such

elements include "1) the use of regularly issued legal process by the defendant to compel performance or forbearance of some act by the plaintiff, 2) with intent to do harm without excuse or justification, 3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Ingersoll ex rel. Estate of Ingersoll v. LaPlante*, 76 Fed.Appx. 350, 355 (2d Cir. 2003). The prohibited collateral objective has been described as "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). A malicious motive in instigating a criminal action is not sufficient; rather, "to state a claim for abuse of process, a plaintiff must establish that the defendant had an improper *purpose* in instigating the action." *Id.* (italics in original). Nor is it sufficient to allege Defendants were seeking to retaliate against Plaintiff by pursuing the Plaintiff's arrest and conviction, but Plaintiff must allege Defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* Although the instant Complaint alleges Defendants took actions that abused their authority so as to violate Plaintiff's civil rights, the Complaint is devoid of the necessary allegations regarding some wrongful collateral purpose to state an abuse of process claim.

Accordingly, Defendants' motion should be GRANTED as to Plaintiff's Fifth Claim asserting abuse of process in violation of due process which should be dismissed without prejudice.

### 4.    Police Misconduct

Plaintiff's Ninth Claim alleges police misconduct based on police brutality and "public intimidation." Complaint, Ninth Claim. Defendants argue in support of dismissal of this claim that to the extent Plaintiff is alleging police brutality and intimidation,

Plaintiff alleges no facts establishing any type of harm to Plaintiff, Defendants' Memorandum at 10, and no caselaw supports a police misconduct claim based on public intimidation.  *Id.* at 10-11.  In opposition, Plaintiff explains that he is alleging abuse of power based on harassment, menacing, and continuing covering up of the same conduct that Plaintiff has endured since September 19, 2015.  Plaintiff's Response at 8-9.

"Police misconduct outside the context of Fourth Amendment seizures may still give rise to claims under the substantive due process protections of the Fourteenth Amendment."  *Hickey v. City of New York*, 2004 WL 2724079, at * 15 (S.D.N.Y. Nov. 29, 2004) (citing cases, including *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 (1998) (considering Fourteenth Amendment due process claim brought by decedent's estate against police officer for vehicular death in crash following high-speed chase aimed at apprehending suspected offender)).  As Defendants argue, Defendants' Memorandum at 10-11, Plaintiff alleges no physical harm to support a police brutality claim, alleges no further specific facts supporting this claim, and no case law supports recognizing a police misconduct claim based on alleged public intimidation.  The court thus considers Plaintiff's Ninth claim according to "'[t]he touchstone of due process [which] is protection of the individual against arbitrary action of government,'"  *Lewis*, 523 U.S. at 845 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)), regardless of "whether the fault lies in a denial of fundamental procedural fairness, . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. . . ."  *Id.* at 846 (citing *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972), and *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  The Supreme Court,

however, has "'always been reluctant to expand the concept of substantive due process. . . .'" *Id.* (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). As such, only arbitrary official conduct that is so egregious as to "shock the conscious" supports a due process violation. *Id.* at 846-47 (citing cases).

In the instant case, Plaintiff's Ninth Claim alleges continuous harassment by "Defendants" for years, Complaint ¶¶ 251-52, but the only specific allegations are that Defendant Swick, after viewing surveillance video of the Brickyard incident filed a police report that was "incongruent" with the events depicted in the video, thereby "falsifying evidence with the potential to be used in criminal litigation," *id.* ¶¶ 253-55, and Defendant Previte falsely accused Plaintiff of yelling at his secretary "to malign and brutalize Plaintiff and destroy his credibility." *Id.* ¶ 256. Although Plaintiff maintains such conduct was undertaken "with malicious intent to brutalize and terrorize plaintiff," *id.* ¶ 257, and "to intimidate plaintiff both publicly and privately to prohibit and deter plaintiff from taking legal action and/or defense," *id.* ¶ 258, nevertheless, such pleadings are inadequate to establish Defendants engaged in official conduct so egregious as to "shock the conduct." *Lewis*, 523 U.S. at 846-47. Accordingly, Plaintiff's Ninth Claim asserting police misconduct in violation of due process should be dismissed for failure to state a claim without prejudice.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion (Dkt. 8), should be GRANTED.

Plaintiff's claims asserting violations of the Third, Fifth, Eighth, and Ninth Amendments,

as well as Plaintiff's Fourteenth Amendment claims for intentional infliction of emotional

distress, slander and libel should be DISMISSED with prejudice and without leave to

replead, whereas Plaintiff's remaining claims should be DISMISSED without prejudice

and with leave to replead.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       July <u>30</u><sup>th</sup>, 2020
                  Buffalo, New York

      **ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*,  892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*,  838 F.2d 55 (2d Cir. 1988).

      Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

                    /s/ *Leslie G. Foschio*

                _____

                      LESLIE G. FOSCHIO
              UNITED STATES MAGISTRATE JUDGE

DATED:      July 30th, 2020
              Buffalo, New York